IN RE: LEHONNA SOISSETTE' CLARK, A Minor Child

No. COA01-1287

(Filed 2 July 2002)

**Termination of Parental Rights— incarcerated parent—failure to pay support—ability to care for child**

The trial court erred by terminating the parental rights of an incarcerated parent based upon conclusions that he had willfully failed to pay a reasonable portion of child care and was incapable of providing for his daughter's care where there was no clear and convincing evidence that respondent had any ability to pay any amount and no clear and convincing evidence that respondent was incapable of arranging for appropriate supervision for the child, although he may be temporarily incapable of personally caring for the child due to his present incarceration.

Appeal by respondent from order entered 29 May 2001 by Judge Robert A. Evans in Wilson County District Court. Heard in the Court of Appeals 16 May 2002.

*Stanley G. Abrams for respondent appellant.*

*Beaman and King, P.A., by Charlene Boykin King, for the Wilson County Department of Social Services, petitioner appellee.*

*Womble Carlyle Sandridge & Rice, by Karen Ousley Hogan, Attorney for the Best Interest of the Child, By and Through Guardian ad Litem, appellee.*

TIMMONS-GOODSON, Judge.

Anthony Clark ("respondent") appeals from an order terminating his parental rights. For the reasons stated herein, we reverse the order of the trial court.

Respondent is the natural father of Lehonna Soisette' Clark ("Lehonna"), born 9 December 1999. On 26 April 2000, the trial court adjudicated Lehonna to be a dependent and neglected child based on evidence that respondent was incarcerated and that Lehonna's mother had a substance abuse problem which rendered her incapable of properly caring for the child. Lehonna was removed from her mother's care and placed into the legal custody of the Wilson County

Department of Social Services ("DSS"), which in turn placed Lehonna in the physical custody of a maternal cousin.

On 5 December 2000, DSS filed a petition to terminate respondent's parental rights. The trial court heard the matter on 9 May 2001 and made the following two findings of fact concerning respondent:

10. . . . Anthony Clark has been incarcerated since the child was removed from the mother. He has been unable to provide care for the child. He has not written the child, sent birthday cards, made phone calls to the child or visited with or seen the child since he was incarcerated January 16, 2001. She has never visited him in prison. He sent some letters to DSS and DSS contacted members of his family after the child's removal regarding the child's custody and care. His mother was unable to provide care for the child. His grandmother once asked for visitation, but did not follow through on the request.

11. Anthony Clark testified. He was involved with the mother and child after the birth on December 9, 1999, but he was incarcerated January 16, 2000, and has been since that time. He did see the child on several occasions between her birth on December 9, 2000 and his incarceration on January 16, 2000, and was present at birth. He expects to be released October 9, 2002. He has written the child's caretaker and has attempted to communicate with the child. He did not know where the child was most of the time after his incarceration, but he did know of the Department of Social Services' involvement. He was visited by the Guardian Ad Litem once in prison. He has not paid any child support, and there is no order for him to do so. He was also in prison before, and between 1989 and 1998, he was mostly in prison or jail on various charges.

Based on these findings, the trial court concluded that respondent had "failed to pay a reasonable portion of the cost of care for the child although physically and financially able to do so" and was "incapable of providing for the proper care and supervision of the child" and that "such inability [would] continue for the foreseeable future." The trial court thereafter determined that it was in Lehonna's best interests that respondent's parental rights be terminated and entered an order accordingly. From this order, respondent appeals.

Respondent argues that the trial court erred in concluding that sufficient grounds existed to terminate his parental rights.

Section 7B-1111 of the North Carolina General Statutes authorizes a court to terminate parental rights on nine different grounds, and a finding of any one of these grounds is sufficient to support the termination of parental rights. *See* N.C. Gen. Stat. § 7B-1111 (2001). Such findings must be based, however, on "clear, cogent, and convincing evidence." N.C. Gen. Stat. §§ 7B-1109(f), 7B-1111(b). The court here concluded that two grounds for termination existed. These were under subsections (a)(3) and (a)(6), which provide that parental rights over a child may be terminated where:

> (3) The juvenile has been placed in the custody of a county department of social services . . . and the parent, for a continuous period of six months next preceding the filing of the petition . . . has willfully failed for such period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.
>
> . . . .
>
> (6) That the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other similar cause or condition.

N.C. Gen. Stat. § 7B-1111 (a)(3), (a)(6). A dependent juvenile is one "in need of assistance or placement because the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or whose parent, guardian, or custodian is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9) (2001).

Respondent contends that there was insufficient evidence to support the trial court's conclusion that he failed to pay a reasonable portion of the cost of Lehonna's care or that he was incapable of caring for his child. Respondent's argument has merit.

In determining what constitutes a "reasonable portion" of the cost of care for a child, the parent's ability to pay is the controlling characteristic. *See In re Clark*, 303 N.C. 592, 604, 281 S.E.2d 47, 55 (1981).

> A parent is required to pay that portion of the cost of foster care for the child that is fair, just and equitable based upon the parent's

**IN RE CLARK**

[151 N.C. App. 286 (2002)]

ability or means to pay. What is within a parent's "ability" to pay or what is within the "means" of a parent to pay is a difficult standard which requires great flexibility in its application.

*Id.* It is undisputed that respondent here paid nothing to DSS for Lehonna's care. Nevertheless, nonpayment constitutes a failure to pay a reasonable portion "if and only if respondent [is] able to pay some amount greater than zero." *In re Bradley,* 57 N.C. App. 475, 479, 291 S.E.2d 800, 802 (1982). The trial court here made no findings of fact regarding respondent's ability to pay any amount greater than zero, nor was any evidence presented indicating that respondent was capable of earning income. In fact, respondent verified that, although he was taking classes in small business administration, he was not yet in "any kind of release program where you're earning money." He further stated, and the trial court found, that respondent had never been ordered to pay any type of child support. Because there was no clear and convincing evidence that respondent had any ability to pay an amount greater than zero, the trial court erred in concluding that respondent failed to pay a reasonable portion of the cost of his child's care. *See In re Garner,* 75 N.C. App. 137, 141-42, 330 S.E.2d 33, 36 (1985) (holding that, where the respondent mother was incarcerated, the trial court erred in terminating her parental rights where it failed to make adequate findings regarding her ability to pay some portion of foster care).

The trial court also determined that respondent was incapable of providing for Lehonna's care. The trial court failed to make findings, however, regarding this ground, except for the fact that respondent was incarcerated and that "[h]is mother was unable to provide care for the child." Incapability under section 7B-1111(a)(6) "may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other similar cause or condition." N.C. Gen. Stat. § 7B-1111(a)(6). There was no evidence at trial to suggest that respondent suffered from any physical or mental illness or disability that would prevent him from providing proper care and supervision for Lehonna, nor did the trial court make any findings of fact regarding such a condition. Respondent testified that his anticipated release date from prison was 9 October 2002. Although respondent may be temporarily incapable, due to his present incarceration, to personally provide such care to the child, there was no clear and convincing evidence to suggest that respondent was incapable of arranging for appropriate supervision for the child. Respondent testified that he gave to DSS the names of several close relatives, including his sister

and niece, who might be willing and able to care for Lehonna until his release from prison, but that DSS had never contacted these persons. *Compare In re Williams*, —— N.C. App. ——, ——, —— S.E.2d ——, —— (May 7, 2002) (COA01-964) (holding that where clear and convincing evidence showed that the father was incarcerated and had no means of arranging alternative care, termination of parental rights was appropriate). The trial court therefore erred in concluding that respondent was incapable of providing for his daughter's care.

In summary, we hold that the trial court erred in concluding that respondent willfully failed to pay for a reasonable portion of child care and that respondent was incapable of providing for his daughter's care. The trial court therefore erred in terminating respondent's parental rights, and we accordingly reverse the judgment of the court.

Reversed.

Judges MARTIN and CAMPBELL concur.