HUNTER, Judge.
H.D.'s and J.B.'s mother and H.D.'s father challenge the trial court's order terminating their parental rights. The father contends (I) the evidence presented was insufficient to satisfy N.C. Gen. Stat. § 7B-1111, (II) the findings of fact were not supported by adequate evidence, (III) the trial court failed to enter its order in the time required by N.C. Gen. Stat. § 7B-1109(e), and (IV) the trial court erroneously excluded respondent's notice of appeal from the final written order. Similarly, the mother presents issues I, III, and IV for our consideration. In addition, the mother also argues the trial court did not adjudicate on the record grounds for the termination of her parental rightsand erroneously entered an order that did not conform with the trial judge's oral ruling at the hearing. After careful consideration, we reverse the trial court's order terminating the father's parental rights; however, we affirm the termination of the mother's parental rights.
The mother has a history of substance abuse problems. In 1997, the mother gave birth to a child who tested positive for cocaine. Approximately a year later, in August 1998, the mother gave birth to J.B. in prison, where she was serving a sentence for the sale and trafficking of cocaine. The next year, in September 2000, she gave birth to H.D., who also tested positive for cocaine at birth. Shortly after H.D.'s birth, in November 2000, J.B. and H.D. were removed from the mother's care. The third child was not residing with the mother at that time and is not a part of this case.
After H.D. and J.B. were adjudicated dependent on 15 May 2001, Cumberland County Department of Social Services ("DSS") recommended substance abuse treatment and developed family service case plans for the mother. However, the mother never successfully completed any substance abuse treatment programs, parenting, or anger management classes and did not have stable suitable housing. She also never contributed financially to her children's care and did not have consistent employment. The mother testified, however, that after the petition to terminate her parental rights was filed, she began working consistently, obtained stable suitable housing, and sought treatment for her substance abuse problems. As to the father, DSS presented minimal evidence. Indeed, the social worker testified her only contact with the father was in court, and that she did not have any information regarding his employment history. She testified that at the time of H.D.'s birth, the father was incarcerated and, at the time of the hearing, he was scheduled to be released in two to three weeks. As for substance abuse, the father had one positive drug test and several negative drug screens. The social worker also testified the father did not have any ability to pay child support.
In contrast, the father's evidence indicated that his sister was caring for H.D. and that while in prison he had sent several letters to his sister regarding his daughter's care and that his sister brought his daughter to the prison for visits. He also held a leadership position in the Narcotics Anonymous and Alcoholics Anonymous programs offered by the prison and the mother testified that the father had encouraged her to seek help for her substance abuse problems. Upon his release from prison, two weeks after the hearing, the father would begin work with a construction contractor.
After receiving evidence at the 18 March 2003 termination of parental rights hearing, the trial court announced in open court that there were sufficient grounds to terminate the parental rights of C.S., the father of J.B., who was not present in court and is not a party to this appeal. After the disposition hearing, the trial court terminated the parental rights of all three parents. The mother and H.D.'s father gave oral notice of appeal. Severalmonths later, the trial court filed its written order terminating the parental rights of all the parents on 10 June 2003.
As an initial matter, we note the mother and father have argued the trial court erroneously failed to indicate in its written order that appellants gave oral notice of appeal. Although N.C. Gen. Stat. § 7B-1113 requires notice of appeal to be in writing, the trial court accepted appellants' oral notice of appeal and indicated the notice of appeal would be incorporated into the trial court's order. However, the order fails to include any reference to the parties' oral notice of appeal. Given appellants' failure to comply with the mandatory requirements of N.C. Gen. Stat. § 7B-1113, which requires written notice of appeal to be filed within ten days after entry of the order, appellants ask this Court to consider its brief a petition for writ of certiorari pursuant to N.C.R. App. P. 21(a). We grant appellants' petition for writ of certiorari.[1]
A. Father's Appeal
"A termination of parental rights proceeding is a two-stage process." In re Howell, 161 N.C. App. 650, 656, 589 S.E.2d 157, 160 (2003). The trial court first examines the evidence and determines whether sufficient grounds exist under N.C. Gen. Stat. § 7B-1111 to warrant termination of parental rights. Id. The trial court's findings must be supported by clear, cogent, andconvincing evidence. Id. at 656, 589 S.E.2d at 160-61. If the trial court determines that any one of the grounds for termination listed in § 7B-1111 exists, the trial court may then terminate parental rights consistent with the best interests of the child. Id. at 656, 589 S.E.2d at 161. The trial court's decision to terminate parental rights is discretionary, and "this Court `should affirm the trial court where the court's findings of fact are based upon clear, cogent and convincing evidence and the findings support the conclusions of law.'" In re Yocum, 158 N.C. App. 198, 203, 580 S.E.2d 399, 403, aff'd per curium, 357 N.C. 568, 597 S.E.2d 674 (2003) (quoting In re Allred, 122 N.C. App. 561, 565, 471 S.E.2d 84, 86 (1996)). Clear, cogent, and convincing evidence "is greater than the preponderance of the evidence standard required in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in criminal cases." In re Montgomery, 311 N.C. 101, 109-10, 316 S.E.2d 246, 252 (1984).
The trial court determined the following termination grounds existed as to the father:
17. That the Respondents have willfully left the juveniles in foster care or placement outside the home for more than twelve months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made within twelve months in correcting those conditions which led to the removal of the juvenile(s). NCGS § 7B-(a)(2).
18. That the juveniles have been placed in Cumberland County Department of Social Services custody since 9/28/00 for [J.B.] and 11/16/00 for [H.D.], and that the Respondents for a continuous period of six months next preceding the filing of this petition havefailed to pay a reasonable portion of the cost of care for the juveniles although physically and financially able to do so, and the respondent's have failed to regularly visit the children since then. NCGS § 7B-1111(a)(3), -1111(7).
19. That the Respondent putative fathers of the juveniles, born out of wedlock, have failed prior to the filing of this petition to establish paternity judicially or by affidavit or to legitimate said juveniles pursuant to provisions of NCGS § 49-10 or filed petition for this specific purpose, or to legitimate the juveniles by marriage to the mother of the said juveniles, or to provide substantial financial support or consistent care with respect to the said juveniles and their mother. NCGS § 7B-1111(5).
20. That the Respondents have willfully abandoned the juveniles for at least six consecutive months immediately preceding the filing of this petition. NCGS § 7B-1111(7).
After careful review of the record, we conclude these grounds were not supported by clear, cogent, and convincing evidence.
First, N.C. Gen. Stat. § 7B-1111(a)(5) (2003) lists as a ground for termination:
(5) The father of a juvenile born out of wedlock has not, prior to the filing of a petition or motion to terminate parental rights:
a. Established paternity judicially or by affidavit which has been filed in a central registry maintained by the Department of Health and Human Services; provided, the court shall inquire of the Department of Health and Human Services as to whether such an affidavit has been so filed and shall incorporate into the case record the Department's certified reply; or
b. Legitimated the juvenile pursuant to provisions of G.S. 49-10 or filed apetition for this specific purpose; or
c. Legitimated the juvenile by marriage to the mother of the juvenile; or
d. Provided substantial financial support or consistent care with respect to the juvenile and mother.
In this case, the social worker testified that "[d]uring a court hearing [the father] stated that he was the father of [H.D.], and the paperwork was signed to legalize him being the legal father." It is unclear whether such testimony means an affidavit of paternity was filed with the Department of Health and Human Services or some other method was undertaken. Nevertheless, given the social worker's testimony that the father acknowledged paternity and that the appropriate paperwork was signed, the trial court's determination in Finding of Fact 19 that the father failed to establish paternity of H.D. was not supported by clear, cogent and convincing evidence.[2]
Second, in Finding of Fact 18, the trial court determined the father had failed to pay a reasonable portion of the cost of care for his daughter although physically and financially able to do so for a continuous period of six months next preceding the filing of the petition.
In determining what constitutes a "reasonable portion" of the cost of care for a child, the parent's ability to pay is the controlling characteristic. . . .
"A parent is required to pay that portion of the cost of foster care for the child that is fair, just and equitable based upon the parent's ability or means to pay. What is within a parent's `ability' to pay or what is within the `means' of a parent to pay is a difficult standard which requires great flexibility in its application."
In re Clark, 151 N.C. App. 286, 288-89, 565 S.E.2d 245, 247 (2002) (citation omitted). "[N]onpayment constitutes a failure to pay a reasonable portion `if and only if respondent [is] able to pay some amount greater than zero." Id. at 289, 565 S.E.2d at 247. In this case, the social worker testified the father did not have an ability to pay support. Specifically, the social worker testified as follows:
Q. And you knew that he was in prison and not able to pay child support; correct?
A. Yes.
. . .
Q. And you have no personal knowledge, as you sit here today, as to whether or not [the father] could have had the ability to provide any child support; correct?
A. Not while being [] incarcerated.
Moreover, the social worker testified she did not have any knowledge of the father's employment history. As there was no evidence presented by DSS indicating the father had an ability to pay an amount greater than zero, Finding of Fact 18 is not supported by clear, cogent and convincing evidence.
In Finding of Fact 18, the trial court also determined the father had not regularly visited with his daughter since being placed in the custody of DSS. However, A.D., the father's sister,testified that H.D. had been in her custody since January 2001 and that she has taken H.D. to visit her father in prison. A.D. also testified the father had sent several letters to her asking about his daughter's welfare. Thus, even though the father was incarcerated, he made an effort to have his daughter visit him and to communicate with her caretaker. Accordingly, we conclude Finding of Fact 18 is not supported by clear, cogent and convincing evidence.
Next, the trial court determined the father had willfully left his daughter in foster care or placement outside the home for more than twelve months without showing to the satisfaction of the court that reasonable progress under the circumstances had been made in correcting those conditions which led to his daughter's removal. However, the record shows the father did not have any involvement in the events or conditions leading to his daughter's removal from the care of the mother. Indeed, the social worker testified that DSS did not have a family service case plan in effect relating to the father and that prior to the court proceedings, the social worker had neither met the father nor had any information regarding his background. Moreover, the social worker testified H.D. was removed from her mother's care due to the mother's substance abuse problems, lack of employment, and lack of stable housing. Finally, "a respondent's incarceration, standing alone, neither precludes nor requires finding the respondent willfully left a child in foster care." In re Harris, 87 N.C. App. 179, 184, 360 S.E.2d 485,488 (1987). Accordingly, we conclude Finding of Fact 17 is unsupported by clear, cogent and convincing evidence.
Finally, in Finding of Fact 20, the trial court determined the father had willfully abandoned his daughter for at least six consecutive months immediately preceding the filing of the petition. "`Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child.'" In re Young, 346 N.C. 244, 251, 485 S.E.2d 612, 617 (1997) (citation omitted). "It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." Pratt v. Bishop, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962). The word "`willful'" encompasses more than a mere intention, but also purpose and deliberation. In re Adoption of Searle, 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986).
In support of its determination that the father had willfully abandoned his daughter, the trial court made the following findings of facts:
11. None of the respondents provide any financial, emotional or physical support for the children.
12. Respondent [father] is incarcerated in Lumberton, NC in DOC on drug related charges for approximately 10 more months.
. . .
15. Family Service Case Plans were developed on 9/28/00, 11/14/00, 1/17/01, 3/6/01, 8/21/01and 11/12/01 to address parenting issues, housing, drug abuse and proper supervision. All parties have failed to successfully complete any reunification goals.
16. Since entering foster care the Respondent[]s have had little or no contact with the children.
First, we note the record does not support Findings of Fact 12, 15, and 16 as it relates to the father. At the time of the hearing, the father was scheduled to be released from prison in approximately two weeks and had acquired employment in construction to begin shortly thereafter. Second, as already indicated, the social worker testified a family service case plan was never developed for the father. In addition, the social worker testified the father did not have any ability to pay child support. Finally, the father's sister, who was taking care of the father's daughter, took the daughter to visit her father in prison and testified the father had sent several letters requesting information about his daughter's health and well-being. Accordingly, we conclude the findings of fact are not supported by the record. Moreover, the record does not demonstrate the father withheld his presence, his love, his care, the opportunity to display filial affection, and willfully neglected to lend support and maintenance. Therefore, clear, cogent and convincing evidence does not support the trial court's determination that the father has willfully abandoned his daughter.
As inferred from Santosky v. Kramer, 455 U.S. 745, 759, 71 L. Ed. 2d 599, 610 (1982), termination of parental rights is an extreme remedy. In such proceedings, there are "vital familialinterests at stake for both parent and child. When the county prevails in termination of parental rights, it does not merely infringe on a fundamental liberty, it ends it forever." In re Moore, 306 N.C. 394, 415-16, 293 S.E.2d 127, 139 (1982) (Carlton, J., dissenting). Therefore, "in a proceeding to terminate parental rights, . . . due process requires at least a `clear and convincing evidence' standard." Price v. Howard, 346 N.C. 68, 76, 484 S.E.2d 528, 532 (1997).
In this case, as it relates to the father, the evidence clearly did not meet the clear, cogent and convincing evidence standard. The trial court terminated the father's parental rights based upon minimal testimony from a social worker that had little or no contact with the father. Moreover, the trial court's order does not reflect a consideration of the evidence presented at the hearing. The order indicated the father would be incarcerated for ten more months, had failed to successfully complete any of the reunification goals outlined in the family service case plans and had not acknowledged paternity. However, the social worker and other witnesses testified the father was scheduled to be released in two to three weeks, had never been placed on a family service case plan and had acknowledged paternity. Seemingly, the trial court copied the allegations from the petition to terminate parental rights and denominated them findings of fact. Indeed, the trial court's findings of fact and conclusions of law are copied verbatim from the petition filed by DSS to terminate his parental rights. While there is no specific statutory criteria which must be stated in the findings of fact or conclusions of law, the trial court's findings must consist of more than a recitation of the allegations. In re Anderson, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002). "In all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon . . . ." N.C. Gen. Stat. § 1A-1, Rule 52(a)(1) (2003). Thus, the trial court must, through "`processes of logical reasoning,'" based on the evidentiary facts before it, "find the ultimate facts essential to support the conclusions of law." In re Harton, 156 N.C. App. 655, 660, 577 S.E.2d 334, 337 (2003) (quoting Appalachian Poster Advertising Co. v. Harrington, 89 N.C. App. 476, 479, 366 S.E.2d 705, 707 (1988)).
Finally, the trial court did not enter its order within the time limits specified by North Carolina Statute. N.C. Gen. Stat. § 7B-1109(e) (2003) mandates "[t]he adjudicatory order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing." The father's parental rights were terminated in a 17 April 2003 hearing; however, the order was not reduced to writing, signed and filed until eighty-nine days after the hearing. This Court has determined the failure to comply with N.C. Gen. Stat. § 7B-1109(e) does not require an order to be vacated unless there is some indication of prejudice to a party. See In re J.L.K., ___ N.C. App. ___, 598 S.E.2d 387 (2004). However, we emphasize the trial courts should adhere to the rules and procedures that governin termination of parental rights proceedings because the termination of one's parental rights is an extreme remedy for both the parent and the child. Indeed, the General Assembly amended N.C. Gen. Stat. § 7B-1109 in 2001 to include the compulsory time within which a hearing must be conducted and orders filed, in an effort to avoid delays in proceedings to terminate parental rights. 2001 N.C. Sess. Laws ch. 208, §§ 7, 22, and 23.
B. Mother's appeal
The mother also challenges the trial court order terminating her parental rights to her two daughters, H.D. and J.B. Similar to H.D.'s father, the trial court in its order relating to the mother copied the petition allegations and did not develop findings of fact after a consideration of the evidence. Moreover, the trial court did not separately delineate its findings of fact, conclusions of law, and its decree. In In re Anderson, 151 N.C. App. 94, 564 S.E.2d 599 (2002), this Court stated:
"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment."
N.C. Gen. Stat. § 1A-1, Rule 52(a)(1) (2001). Rule 52(a) requires three separate and distinct acts by the trial court: (1) find the facts specially; (2) state separately the conclusions of law resulting from the facts so found; and (3) direct the entry of the appropriate judgment. Quick v. Quick, 305 N.C. 446, 451, 290 S.E.2d 653, 657 (1982). Thus, the trial court's factual findings must be more than a recitation of allegations. They must be the "specific ultimate facts . . . sufficient for the appellate court to determine that the judgment is adequately supported by competent evidence." Montgomeryv. Montgomery, 32 N.C. App. 154, 156-57, 231 S.E.2d 26, 28 (1977). "Ultimate facts are the final resulting effect reached by processes of logical reasoning from the evidentiary facts." Appalachian Poster Advertising Co. v. Harrington, 89 N.C. App. 476, 479, 366 S.E.2d 705, 707 (1988).
"In summary, while Rule 52(a) does not require a recitation of the evidentiary and subsidiary facts required to prove the ultimate facts, it does require specific findings of the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached."
Quick, 305 N.C. at 452, 290 S.E.2d at 658.
In re Anderson, 151 N.C. App. at 96-97, 564 S.E.2d at 601-02 (emphasis added). As stated, termination of parental rights is an extreme remedy which ends the familial relationship forever. See Santosky, 455 U.S. at 759, 71 L. Ed. 2d at 610. Therefore, in such cases, the trial court should adhere to the procedural guidelines and protections which govern termination of parental rights actions.
In this case, the trial court merely copied the petition allegations which in several instances are contrary to the evidence presented at the hearing. Moreover, the trial court did not separate its conclusions of law from the findings of fact and did not specify to which parent the conclusion of law or finding of fact was applicable. Indeed, the evidence reveals some of the findings of fact and conclusions of law could only pertain to one of three parents.
The requirement for appropriate findings of fact and conclusions of law is not designedto encourage ritualistic recitations by the trial court. The requirement is designed to dispose of the issues raised by the pleadings and to allow the appellate courts to perform their proper function in the judicial system. Without such findings and conclusions, it cannot be determined whether or not the judge correctly found the facts or applied the law thereto.
Montgomery v. Montgomery, 32 N.C. App. at 158, 231 S.E.2d at 29.
Notwithstanding these procedural flaws in the trial court's order, we have reviewed the record and hold the termination of the mother's parental rights was supported by clear, cogent and convincing evidence. As this Court has held, "[a] finding of any one of the seven separately enumerated grounds is sufficient to support a termination [of parental rights]." In re Pierce, 67 N.C. App. 257, 261, 312 S.E.2d 900, 903 (1984). In this case, the trial court determined as a ground for termination: "20. That the Respondents have willfully abandoned the juveniles for at least six consecutive months immediately preceding the filing of this petition."
"`Abandonment has . . . been defined as wilful neglect and refusal to perform the natural and legal obligations of parental care and support. It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child . . . .'"
In re Apa, 59 N.C. App. 322, 324, 296 S.E.2d 811, 813 (1982) (emphasis omitted).
The record indicates that the children were removed from the mother's care on 25 January 2001. H.D. was placed with herpaternal aunt and J.B. was placed with her maternal grandmother. According to testimony, before the mother could visit with H.D., she had to have a negative drug screen. As the mother only had one negative drug screen between the time H.D. was removed from her care on 25 January 2002 and the filing of the petition on 23 April 2002, the mother had visited H.D. once during that year. As to J.B., the mother testified that she had not visited with her but had asked the maternal grandmother about her well-being during telephone conversations. The lack of contact with her children during the six months next preceding the filing of petition to terminate the mother's parental rights constitutes clear, cogent and convincing evidence supporting the termination of parental rights under N.C. Gen. Stat. § 7B-1111(a)(7).[3]
Finally, the mother also contends the trial court committed reversible error when it failed to file its written order within thirty days as mandated by N.C. Gen. Stat. § 7B-1109(e). As stated in our review of the father's appeal, this Court has determined the failure to comply with N.C. Gen. Stat. § 7B-1109(e) does not require an order to be vacated unless there is some indication of prejudice to a party. See In re J.L.K., ___ N.C. App. ___, 598S.E.2d 387. As the mother has not shown she was prejudiced by the delay in the filing of the order, we overrule this assignment of error.
Reversed and vacated in part; affirmed in part.
Judges TIMMONS-GOODSON and McCULLOUGH concur.
Report per Rule 30(e).

It should be noted that neither DSS nor the guardian ad litem filed an appellee's brief, a motion to dismiss for failure to give timely notice of appeal or a memorandum in opposition to appellants' petition for writ of certiorari.

The mother also testified that she and H.D.'s father married before H.D.'s birth.

Even though we have concluded one ground exists for terminating the mother's parental rights, we note the trial court in Finding of Fact 17 quoted a version of N.C. Gen. Stat. § 7B-1111(a)(2) that has been amended by the General Assembly. Under the current version of N.C. Gen. Stat. § 7B-1111(a)(2), the showing of reasonable progress in correcting the conditions that led to the removal of the juveniles is no longer limited to a twelve month time period. See N.C. Gen. Stat. § 7B-1111(a)(2)(2003) and 2001 N.C. Sess. Laws ch. 208, § 6.