An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-574

NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2014

IN THE MATTER OF:

|  | Guilford County |
| --- | --- |
| C.T.L., | Nos. 11 JT 441 |
| C.T.L., JR., | 11 JT 442 |
| Z.J.J., | 11 JT 443 |
| Z.T.L. | 11 JT 444 |

Appeal by respondents from order entered 8 February 2013 by Judge H. Thomas Jarrell, Jr. in Guilford County District Court. Heard in the Court of Appeals 25 November 2013.

*Mercedes O. Chut for petitioner-appellee.*

*Levine & Stewart, by James E. Tanner III, for respondent-appellant mother.*

*Ryan McKaig for respondent-appellant father.*

*Smith, James, Rowlett & Cohen, L.L.P., by Margaret Rowlett, for guardian ad litem-appellee.*

GEER, Judge.

Respondent mother appeals from the trial court's order terminating her parental rights to C.T.L. ("Carl"), C.T.L., Jr.

("Cody"), Z.J.J. ("Zoey"), and Z.T.L. ("Zora").[1] Respondent father also appeals the order, which terminated his parental rights to Carl. The fathers of the remaining juveniles are not parties to this appeal. We conclude that at least one ground existed to terminate respondents' parental rights and that the trial court did not abuse its discretion in terminating respondents' parental rights given the facts of this case. We, therefore, affirm.

## Facts

On 6 June 2011, the Chatham County Department of Social Services ("DSS") filed juvenile petitions asserting that the children were neglected and dependent. The petitions alleged that respondent parents had a history of domestic violence; that respondent mother had been arrested for a number of outstanding charges, had mental health issues, had no money, and had no water in her home; and that respondent father had a criminal history including drug convictions and misdemeanor child abuse charges. The children were taken into nonsecure DSS custody.

The trial court adjudicated the children dependent in an order entered 1 September 2011. The court also transferred jurisdiction to Guilford County based on findings that

---

[1]Pseudonyms are used to protect the privacy of the children and for ease of reading.

respondent mother, respondent father, and the children were residing in Greensboro.

On 1 June 2012, Guilford County DSS filed a petition to terminate respondent parents' parental rights to the children, alleging as grounds for termination neglect, willful failure to pay a reasonable portion of the cost of care for the children, and willful abandonment pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (3), and (7) (2011). With respect to respondent father, DSS also alleged a failure to legitimate pursuant to N.C. Gen. Stat. § 7B-1111(a)(5).

The trial court conducted a termination of parental rights hearing on 15 January 2013 and in an order entered on 8 February 2013, found the existence of neglect and willful failure to pay a reasonable portion of the cost of care for the children as grounds for termination for both parents. *See* N.C. Gen. Stat. § 7B-1111(a)(1), (3). The trial court also found respondent father had failed to legitimate his son as an additional ground for terminating respondent father's rights. *See* N.C. Gen. Stat. § 7B-1111(a)(5). At disposition, the trial court concluded that it was in the children's best interests to terminate the parental rights of respondents. Respondents each timely appealed to this Court.

## Discussion

Termination of parental rights involves a two-stage process. *In re Blackburn*, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). At the adjudicatory stage, "the petitioner has the burden of establishing by clear and convincing evidence that at least one of the statutory grounds listed in N.C. Gen. Stat. § 7B-1111 exists." *In re Anderson*, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002).

"If the trial court determines that grounds for termination exist, it proceeds to the dispositional stage, and must consider whether terminating parental rights is in the best interests of the child." *Id.* at 98, 564 S.E.2d at 602. The trial court's decision to terminate parental rights is reviewed under an abuse of discretion standard. *In re Nesbitt*, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001). "'An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision.'" *In re Robinson*, 151 N.C. App. 733, 737, 567 S.E.2d 227, 229 (2002) (quoting *Chicora Country Club, Inc. v. Town of Erwin*, 128 N.C. App. 101, 109, 493 S.E.2d 797, 802 (1997)).

In reviewing both the adjudication and the disposition, findings of fact supported by competent evidence are binding on appeal even if evidence has been presented contradicting those findings. *In re N.B., I.B., A.F.*, 195 N.C. App. 113, 116, 670

S.E.2d 923, 925 (2009). "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

I

Although the trial court found multiple grounds for termination, a trial court's termination of parental rights order will be upheld so long as at least one of the grounds for termination found by the trial court is supported by clear, cogent, and convincing evidence. *In re Bradshaw*, 160 N.C. App. 677, 682, 587 S.E.2d 83, 87 (2003). Because we conclude that the trial court's determination that grounds existed to terminate both respondent mother's and respondent father's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(3) is supported by the findings of fact, and those findings were based upon competent evidence, we do not address the remaining grounds identified by the trial court.

Under N.C. Gen. Stat. § 7B-1111(a)(3), a court may terminate parental rights upon a finding that:

> The juvenile has been placed in the custody of a county department of social services, a licensed child-placing agency, a child-caring institution, or a foster home, and the parent, for a continuous period of six months next preceding the filing of the petition or motion, has willfully failed for such period to pay a reasonable portion of

the cost of care for the juvenile although physically and financially able to do so.

"In determining what constitutes a 'reasonable portion' of the cost of care for a child, the parent's ability to pay is the controlling characteristic." *In re Clark*, 151 N.C. App. 286, 288, 565 S.E.2d 245, 247 (2002). "[N]onpayment constitutes a failure to pay a reasonable portion 'if and only if respondent [is] able to pay some amount greater than zero.'" *Id.* at 289, 565 S.E.2d at 247 (quoting *In re Bradley*, 57 N.C. App. 475, 479, 291 S.E.2d 800, 802 (1982)).

The trial court made the following findings pertaining to this ground for termination:

> [8(B).] . . . [Respondent mother] reported that she worked at Liberty Tax from 01/12 thru 04/12, and also that she worked for a brief period of time for Servicemaster and also for Furniture Market. . . .
>
> . . . .
>
> [8(B).][2] [Respondent father] reports that he is currently in school studying welding and working part-time.
>
> . . . .
>
> 11. No parent has paid anything toward the cost of care or otherwise supported these juveniles since they came into DSS custody.

---

[2]The trial court's order included two separate findings of fact each numbered "8," with the first finding of fact 8 and its subparagraphs addressing respondent mother's compliance with her case plan and the second finding of fact 8 and its subparagraphs addressing respondent father's compliance with his case plan.

Neither [respondent mother] nor [respondent father] suffer from any disability which prevents them from earning at least some income.

. . . .

15. Grounds exist to terminate the parental rights of [respondent mother] pursuant to N.C.G.S. §7B-1111(a)(3): The juveniles have been placed in the legal custody of the Guilford County [DSS] and the mother of the juveniles, for a continuous period of six months next preceding the filing of the Petition, has willfully failed for such period to pay a reasonable portion of the cost of care for the juveniles although physically and financially able to do so. [Respondent mother] reports that she has worked for three different employers during the pendency of this case. During that time, she has paid no support for the benefit of the juveniles.

. . . .

17. Grounds exist to terminate the parental rights of [respondent father] with respect to [Carl] pursuant to N.C.G.S. §7B-1111(a)(3): The juvenile has been placed in the legal custody of the Guilford County [DSS] and [respondent father], for a continuous period of six months next preceding the filing of the Petition, has willfully failed for such period to pay a reasonable portion of the cost of care for the juvenile, although physically and financially able to do so. [Respondent father] has been gainfully employed, but he has not paid anything towards the support of the juvenile [Carl].

Respondent father, however, without citing any legal authority, argues that he made a sufficient contribution to

Carl's cost of care by bringing necessities to visits with Carl. However, "cost of care" under N.C. Gen. Stat. § 7B-1111(a)(3) contemplates the monetary cost of foster care that DSS is required to pay for the juvenile and does not contain any offset for the provision of gifts by a parent. *See In re Montgomery*, 311 N.C. 101, 113, 316 S.E.2d 246, 254 (1984) (holding "'cost of care' refers to the amount it costs the Department of Social Services to care for the child, namely, foster care"). Furthermore, respondent father testified that he was being paid approximately $1,825.00 per month, and he lived with his mother during the pendency of this case, thereby reducing his living expenses.

The trial court could, therefore, properly find that respondent father could pay some amount towards the care of his child, but did not do so. Respondent father makes no argument that the trial court's findings are insufficient to support the trial court's conclusion that grounds existed under N.C. Gen. Stat. § 7B-1111(a)(3) to terminate his parental rights.

Respondent mother does not dispute the finding that she paid no amount of support for the cost of care of the children despite having been employed on and off during the pendency of the case. Instead, she argues that the trial court's conclusion is not supported because (1) the trial court's finding that she

was not under any disability was not supported by the evidence, (2) there was no evidence concerning her income relative to her expenses at any time during the case or during the six months immediately preceding the filing of the petition, and (3) she was never ordered or requested to pay monetary child support during the time periods she was working.

Respondent mother argues that the trial court's finding on the issue of neglect that she had "untreated mental issues" conflicts with the finding on the issue of willful failure to pay child support that she was not under any disability, and that each of these findings is unsupported by the evidence. We disagree.

That respondent mother had untreated mental issues is supported by her testimony that she had tried to commit suicide the month before trial, resulting in an inpatient psychiatric hospitalization, but that she had quit her therapy sessions that were required by the DSS plan. Despite respondent mother's mental health issues, however, the evidence shows, and respondent mother does not dispute, that she was able to work, as the trial court found. She maintained a full time seasonal position for several months and had two other jobs during the pendency of this case. The evidence in no way suggests that she

left these positions due to mental health concerns or that her mental health issues interfered with her employment.

Therefore, the trial court's determination that respondent mother did not suffer from "any disability *which prevents [her] from earning at least some income*" is supported by the evidence and is not inconsistent with the finding that she had untreated mental health issues. (Emphasis added.) Although respondent mother additionally argues that she had applied for disability, her application for disability was still pending at the time of the hearing.

As for respondent mother's remaining arguments, she has not cited any authority to support her assertion that the trial court was required to make findings as to her expenses or that she was requested or ordered to pay child support. Indeed, this Court has expressly held that "there is no requirement that the trial court make a finding as to what specific amount of support would have constituted a 'reasonable portion' under the circumstances." *In re Huff*, 140 N.C. App. 288, 293, 536 S.E.2d 838, 842 (2000). The trial court is only required to "make specific findings that a parent was able to pay some amount greater than the amount the parent, in fact, paid during the relevant time period." *Id.* The trial court met this requirement.

Therefore, we conclude that the evidence supports the trial court's finding that respondent mother was physically and financially able to pay some amount of support but failed to do so. *See In re Tate*, 67 N.C. App. 89, 95, 312 S.E.2d 535, 539 (1984) (rejecting respondent's argument that there was insufficient evidence of her ability to provide support where evidence showed that she was "an able-bodied woman capable of working" and voluntarily left several jobs); *In re J.E.M., Jr.*, ___ N.C. App. ___, ___, 727 S.E.2d 398, 401 (2012) (holding that grounds existed to terminate father's parental rights for willful failure to pay costs of child care when father made no payments while child in DSS custody despite being "'gainfully employed from time to time'").

## II

Next, respondents argue that the trial court abused its discretion in concluding that the termination of their parental rights was in the best interests of the juveniles. We disagree.

The trial court considered all of the factors required by N.C. Gen. Stat. § 7B-1110(a) (2011). Specifically, the trial court found that the children ranged in age from four to 11 years old; their relatively young ages made them adoptable and the likelihood of the children being adopted was high; the maternal grandmother indicated a willingness to adopt Cody, Zoey

and Zora; Carl's foster mother expressed her desire to adopt Carl; neither parent adequately complied with their case plan in order to reunify with the children in a reasonable amount of time and termination would assist in the permanent placement by allowing the possibility of adoption; the children have a good relationship with respondent mother, respondent father, and all the adoptive families; and the children are bonded with their current caretakers. Respondents do not contend that the trial court failed to consider the statutorily mandated factors or that the findings are unsupported by the evidence.

Respondent mother argues, however, that the trial court abused its discretion by failing to consider alternatives to a termination of parental rights and adoption. Specifically, she argues that the children's maternal grandmother was willing to care for all four children and that such an arrangement would have left the family unit intact. During the dispositional phase, a court may consider a relative's willingness and desire to take custody of a child as grounds for why it would not be in the child's best interest to terminate respondent's parental rights. *See In re J.A.A. & S.A.A.*, 175 N.C. App. 66, 75, 623 S.E.2d 45, 51 (2005).

Here, the maternal grandmother served as a placement for respondent mother's two daughters, Zora and Zoey, and was

considered to be an adoptive placement for them. Carl and Cody were previously placed with the maternal grandmother but were moved to different foster homes in 2011. At the hearing, the maternal grandmother testified that she wished to have all four children placed with her; that she believed respondent mother loved her children and was capable of getting them back; and that she was willing to serve as a placement if respondent mother was not able to get the children back.

The trial court was thus aware of the maternal grandmother's position, but decided it was in the best interest of the children to have "permanence that they can count on" and that "[t]ermination will allow adoption to be a possibility for these children, which is the most permanent plan." The trial court also found that Carl was very bonded with his foster mother and that he stated that he could live with his foster family for "'a hundred more years.'" Based on the foregoing, we cannot say that the trial court abused its discretion by terminating respondent mother's parental rights to the children.

Respondent father argues that the trial court abused its discretion in terminating his parental rights because he could have achieved reunification within a reasonable period of time. Respondent father emphasizes that he has worked with DSS to accomplish his goal of reunification with Carl by obtaining a

mental health assessment, employment, and housing, and that he has shown his devotion to Carl by maintaining contact with DSS and providing support to Carl in the form of clothing and food. He argues that this Court has stressed the importance of preserving families whenever possible. *See Bost v. Van Nortwick*, 117 N.C. App. 1, 8, 449 S.E.2d 911, 915 (1994) ("[A] finding that the children are well settled in their new family unit . . . does not alone support a finding that it is in the best interest of the children to terminate respondent's parental rights.").

Respondent father's argument amounts to an invitation that we substitute our judgment for that of the trial court. However, the decision regarding how to weigh the factors rests solely with the trial court. After proper consideration of the statutorily mandated factors, the trial court ultimately concluded that it was in Carl's best interest to terminate respondent father's parental rights. Based on our review of the record, we cannot conclude that the trial court abused its discretion in making this determination. We, therefore, affirm the order of the trial court.

Affirmed.

Chief Judge MARTIN and Judge STROUD concur.

Report per Rule 30(e).