An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1037
NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

IN THE MATTER OF:                        Davidson County
                                         Nos. 10 JT 133-34, 11 JT 134
S.S.H., J.K.H., T.J.H.


Appeal by respondent-mother from orders entered 26 June 2013 by Judge Jimmy L. Myers in Davidson County District Court. Heard in the Court of Appeals 14 April 2014.

> *Assistant County Attorney Christopher M. Watford for petitioner-appellee Davidson County Department of Social Services.*

> *Assistant Appellate Defender Joyce L. Terres for respondent-appellant mother.*

> *Laura Bodenheimer for guardian ad litem.*


HUNTER, JR., Robert N., Judge.


Respondent-mother appeals from the district court's orders terminating her parental rights to the juveniles S.S.H. ("Sarah"), J.K.H. ("Jacob"), and T.J.H. ("Thomas").[1] We affirm.

---

[1] Pseudonyms are used for ease of reading and to protect the identity of the juveniles.

On 14 September 2010, the Davidson County Department of Social Services ("DSS"), took nonsecure custody of Sarah and Jacob and filed juvenile petitions alleging that they were neglected and dependent. The petitions alleged that respondent-mother was not attending to eight-month-old Jacob's respiratory condition; that after Jacob's admission to the hospital, his treating physician felt it was not safe to discharge Jacob into respondent-mother's care; that respondent-mother and the father had a history of domestic violence; that the father's whereabouts were unknown; and that respondent-mother had failed to seek routine medical care for Sarah.

In an order entered on 13 January 2011, the trial court adjudicated Sarah and Jacob dependent, based on the stipulations of the parties. The trial court entered a separate disposition order, in which it retained custody with DSS, implemented a permanent plan of reunification, and ordered respondent-mother to comply with certain directives.

Respondent-mother gave birth to Thomas in April 2011. On 6 October 2011, DSS obtained nonsecure custody of Thomas and filed a petition alleging that he was neglected and dependent. The petition alleged that respondent-mother had several outstanding warrants for her arrest for failure to appear in response to

multiple criminal charges in Davidson County. The petition further alleged that on 28 September 2011, when law enforcement officers confronted respondent-mother, she threatened to drop five-month-old Thomas on the ground to keep the officers at bay. The officers also observed her smoking a cigarette, dropping ashes on Thomas, and blowing smoke in his face. Respondent-mother resisted, but was eventually arrested and charged with child abuse, resisting an officer, injury to personal property, and assault on a government official with a deadly weapon. The petition further alleged that respondent-mother refused to make arrangements for Thomas's care after her arrest, tested positive for marijuana at Thomas's birth, and was not participating in services with DSS.

In an order entered on 15 December 2011, the trial court adjudicated Thomas neglected and dependent, based on the stipulation of the parties. The trial court entered a separate disposition order on 29 February 2012, in which it retained custody with DSS, implemented a permanent plan of reunification, and ordered respondent-mother to comply with certain directives.

On 28 November 2011[2] and 21 September 2012, DSS filed three petitions to terminate the parental rights of respondent-mother.

---

[2] DSS amended one of the petitions on or about 22 January 2013 to

DSS alleged the following grounds for termination against respondent-mother: (1) neglect; (2) failure to make reasonable progress; and (3) willful failure to pay a reasonable portion of the cost of care for the juveniles. *See* N.C. Gen. Stat § 7B-1111(a)(1)-(3) (2013). The court conducted a termination of parental rights hearing on 30 May 2013. In three separate orders entered on 26 June 2013, the court found the existence of the following grounds for termination against respondent-mother as to all three children: (1) failure to make reasonable progress; and (2) willful failure to pay a reasonable portion of the cost of care for the juveniles. *See* N.C. Gen. Stat. § 7B-1111(a)(2), (3). The trial court also found neglect as a ground for termination as to Thomas. *See* N.C. Gen. Stat. § 7B-1111(a)(1). At disposition, the trial court concluded that it was in the juveniles' best interests to terminate the parental rights of respondent-mother.[3] Respondent-mother appeals.

Respondent-mother challenges the trial court's determinations concerning the grounds for termination. Pursuant to N.C. Gen. Stat. § 7B-1111(a), a trial court may terminate parental rights based upon a finding of one of the eleven

---

reflect the correct name of Sarah's father.
[3] The trial court also terminated the parental rights of the juveniles' fathers, but they do not appeal.

statutorily enumerated grounds. If this Court determines that the findings of fact support one ground for termination, we need not review the other challenged grounds. *In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426-27 (2003). We review the trial court's order to determine "whether the trial court's findings of fact were based on clear, cogent, and convincing evidence, and whether those findings of fact support a conclusion that parental termination should occur[.]" *In re Oghenekevebe*, 123 N.C. App. 434, 435-36, 473 S.E.2d 393, 395 (1996) (citation omitted).

After reviewing the record, we conclude that the trial court's findings of fact are sufficient to support the ground of failure to pay a reasonable portion of the cost of care for the juveniles. The pertinent statute provides the following as a ground for termination:

> The juvenile has been placed in the custody of a county department of social services, a licensed child-placing agency, a child-caring institution, or a foster home, and the parent, for a continuous period of six months next preceding the filing of the petition or motion, has willfully failed for such period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.

N.C. Gen. Stat. § 7B-1111(a)(3).

"In determining what constitutes a 'reasonable portion' of the cost of care for a child, the parent's ability to pay is the controlling characteristic." *In re Clark*, 151 N.C. App. 286, 288, 565 S.E.2d 245, 247 (citation omitted), *disc. review denied*, 356 N.C. 302, 570 S.E.2d 501 (2002). "[N]onpayment constitutes a failure to pay a reasonable portion 'if and only if respondent [is] able to pay some amount greater than zero.'" *Id.* at 289, 565 S.E.2d at 247 (quoting *In re Bradley*, 57 N.C. App. 475, 479, 291 S.E.2d 800, 802 (1982)).

In the instant case, the trial court concluded that each child had been placed in DSS custody and that respondent-mother for a continuous period of six months preceding the filing of each petition had willfully failed to pay a reasonable portion of the cost of care for each child despite being physically and financially able to do so. The trial court made the following findings of fact to support this ground for termination:[4]

---

[4] The pertinent findings of fact in each order are nearly identical to each other, but have different numbering. We therefore have set out the findings from Sarah's order and decline to set out the other two sets of findings. The first number refers to the order pertaining to Sarah, the second number to that of Jacob, and the third to that of Thomas. Any differences in the findings are attributable to the differences between the children, and do not affect the substance of the finding or the ground for termination. For instance, the total cost of care in findings 40, 38, and 31 is slightly different for each child, and the order pertaining to Sarah is the only

38/36/29. [Respondent-mother] is able-bodied and the Court is unaware of any disability that prevents her from participating in gainful employment. [Respondent-mother] reported to social worker Ramirez that she had been doing exotic dancing for income.

. . . .

40/38/31. For the six months prior to the filing of the petition in this matter, [DSS] paid $8,598.00 for room and board and $120.00 in clothing allowance for the benefit of the minor child. In that same time, the Department has received no payments from the respondent parents, and has not received any payment as of the date of the affidavit filed in this matter which was received into evidence as Petitioner's Exhibit 33. The Department has advanced a total of $44,508.22 for the actual cost of care of the minor child as of the date of this affidavit.

41/39/32. On or about January 28, 2011 [as to Sarah and Jacob; January 26, 2012 as to Thomas], the Court established that [respondent-mother] was to pay $50.00 per month as current support and $5.00 toward arrears. The total monthly obligation of $55.00 is a reasonable and just amount for the

---

order that references an amended petition, because an amended petition was only filed in her juvenile case. The only major substantive difference is noted in brackets in finding 41/39/32: respondent-mother's support agreement for Thomas was entered into on a different date than that of Sarah and Jacob.

> cost of care for the minor child, especially in light of the actual cost of care as set forth above. [Respondent-mother] has the ability to pay this amount. A copy of the order was received into evidence as Petitioner's Exhibit 38.
>
> . . . .
>
> 43/41/34. For the six months prior to filing the petition in this matter, [respondent-mother] paid nothing. [She] was found in civil contempt of the January 28, 2011 order on August 5, 2011 and July 12, 2012, a copy of those contempt orders were received into evidence as Petitioner's Exhibits 39 and 40. During the six months immediately preceding the filing of the amended petition, [respondent-mother] only paid a $100.00 purge payment. [She] has willfully failed to pay a reasonable portion of the cost of care for [her] minor child during the six months immediately preceding the filing of the original petition and the amended petition in this matter.

Respondent-mother has failed to specifically challenge any of these findings of fact as lacking evidentiary support. Consequently, they are presumed to be supported by competent evidence and are binding on appeal. *See In re M.D.*, 200 N.C. App. 35, 43, 682 S.E.2d 780, 785 (2009).

Respondent-mother argues that the trial court failed to establish that she had the ability to pay or earn income during the relevant time period. However, respondent-mother's ability to pay was established by her child support orders. *See In re Becker*, 111 N.C. App. 85, 94, 431 S.E.2d 820, 826 (1993) (finding that since the respondent-father entered into a voluntary support agreement, "DSS did not need to provide detailed evidence of his ability to pay support during the relevant time period"). In addition to the findings regarding the support orders, the trial court made findings that respondent-mother was able-bodied, that she was not under any disability that prevented her from participating in gainful employment, and that she had earned income through exotic dancing. Contrary to respondent-mother's argument, the trial court's findings are linked to the relevant statutory time period and establish that she either earned income or was capable of doing so. Thus, the trial court's findings establish that respondent-mother had the ability to pay some amount greater than zero. *See In re Tate*, 67 N.C. App. 89, 95, 312 S.E.2d 535, 539-40 (1984) (rejecting respondent's argument that there was insufficient evidence of her ability to provide

support where evidence showed that she was "an able-bodied woman capable of working" and voluntarily left several jobs).

Based on the foregoing, we conclude that the trial court did not err in terminating respondent-mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(3), so we affirm the orders of the trial court.

Affirmed.

Judges ERVIN and DAVIS concur.

Report per Rule 30(e).