IN THE SUPREME COURT OF NORTH CAROLINA

No. 153A20

Filed 11 December 2020

IN THE MATTER OF: A.L.S. and M.A.W.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 27 December 2019 by Judge Christy E. Wilhelm in District Court, Cabarrus County. This matter was calendared for argument in the Supreme Court on 23 November 2020, but was determined upon the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*E. Garrison White for petitioner-appellee Cabarrus County Department of Human Services.*

*Adams, Howell, Sizemore & Adams PA, by Sarah M. Skinner, for appellee Guardian ad Litem.*

*Sean P. Vitrano for respondent-appellant mother.*

ERVIN, Justice.

Respondent-mother Tiffany K. appeals from orders entered by the trial court terminating her parental rights in her minor children A.L.S. and M.A.W.[1] After careful consideration of respondent-mother's arguments in light of the record and the applicable law, we affirm the trial court's termination orders.

---

[1] A.L.S. and M.A.W. will, respectively, be referred to throughout the remainder of this opinion as "Allen" and "Maria," which are pseudonyms used to protect the juveniles' identities and for ease of reading.

On 24 August 2018, the Cabarrus County Department of Human Services filed petitions alleging that Allen and Maria were neglected and dependent juveniles and obtained the entry of orders placing the children in nonsecure custody. DHS alleged that respondent-mother had tested positive for the presence of cocaine and marijuana while pregnant with Maria. On or about 17 May 2018, DHS received a report that Maria had tested positive for the presence of cocaine at birth and that there were concerns about the quality of the care that respondent-mother had been providing for the children. Respondent-mother provided the name of an individual who was willing to serve as a temporary safety provider for Allen and Maria. However, several problems developed with this safety placement, including an accidental shooting in the home, the existence of domestic discord and criminal activity, and the fact that the provider's health difficulties interfered with her ability to provide adequate care for the children. In addition, DHS alleged that, on 16 July 2018, respondent-mother had tested positive for the presence of cocaine and reported that she would be rendered homeless as a result of being evicted from her home. Finally, DHS alleged that respondent-mother was on probation and had pending court dates in both Cabarrus and Rowan County involving multiple criminal charges.

The juvenile petitions came on for hearing in the District Court, Cabarrus County, on 25 October 2018. On 7 November 2018, Judge William G. Hamby, Jr., entered an order concluding that the children were neglected and dependent juveniles and ordering that they remain in DHS custody. As a precondition to allowing her to

reunify with the children, Judge Hamby ordered respondent-mother to complete a psychological and parenting capacity evaluation and a substance abuse assessment, to submit to random drug and alcohol screens, to complete a life skills assessment, to take advantage of a supervised weekly visitation plan, and to obtain and maintain suitable housing for herself and her children. On or about 27 October 2018,[2] respondent-mother was arrested and charged with having committed multiple criminal offenses including giving fictitious information to a law enforcement officer, resisting a public officer, hit and run driving, and fleeing to elude arrest.

After a review hearing held on 10 January 2019, the trial court entered an order on 20 February 2019 finding that respondent-mother had made little progress toward satisfying the requirements imposed upon her in the initial dispositional order. Prior to her incarceration, respondent-mother had attended two of a possible six visits with Allen and Maria and had failed to maintain biweekly contact with DHS. At this stage of the proceedings, however, the primary permanent plan for Allen and Maria remained reunification coupled with a secondary permanent plan of guardianship.

---

[2] As an aside, we note that the 20 February 2019 order states that respondent-mother's arrest occurred on both 24 October 2018 and 27 October 2018. However, we are unable to determine that the actual date upon which respondent-mother was placed under arrest makes any material difference for the purpose of properly resolving the issues that have been raised for our consideration on appeal.

After a permanency planning hearing held on 28 March 2019, the trial court entered an order finding that, due to respondent-mother's incarceration, she had not made any progress in complying with the requirements that had been imposed upon her in the initial dispositional order and that it was not possible for the children to be returned to her care within the next six months. In addition, the trial court noted that respondent-mother had entered pleas of guilty to numerous charges on 31 January 2019 and had been sentenced to a term of thirty-two to fifty-six months imprisonment. The trial court changed the primary permanent plan for Allen and Maria to one of adoption, with a secondary permanent plan of reunification.

On 10 July 2019, DHS filed motions seeking to have the parental rights of respondent-mother and the children's unknown father terminated on the basis of neglect, N.C.G.S. § 7B-1111(a)(1); willful failure to pay a reasonable portion of the cost of the care that the children had received while in DHS custody for a continuous period of six months prior to the filing of the termination motions, N.C.G.S. § 7B-1111(a)(3); failure to legitimate the children, N.C.G.S. § 7B-1111(a)(5); dependency, N.C.G.S. § 7B-1111(a)(6); and willful abandonment, N.C.G.S. § 7B-1111(a)(7). The termination motions came on for hearing before the trial court on 14 November 2019. On 27 December 2019, the trial court entered orders terminating respondent-mother's parental rights in the children on the basis of neglect, dependency, and willful abandonment and determining that the termination of respondent-mother's parental rights would be in the children's best interests. *See* N.C.G.S. § 7B-1110(a)

(2019). Respondent-mother noted an appeal to this Court from the trial court's termination orders.

In seeking relief from the trial court's termination orders before this Court, respondent-mother challenges a number of the trial court's findings of fact as lacking in sufficient evidentiary support. In addition, respondent-mother challenges the lawfulness of the trial court's conclusion that her parental rights in Allen and Maria were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(1) on the grounds that the trial court's findings and the record evidence did not support a conclusion that the children were likely to be neglected in the event that they were returned to her care; that her parental rights in the children were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(6) on the grounds that the trial court had failed to explicitly find that her incarceration constituted a condition that rendered her incapable of parenting Allen and Maria for the foreseeable future; and that her parental rights in the children were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(7) on the grounds that the trial court's findings and the record evidence did not support a conclusion that she had willfully abandoned them.

According to well-established North Carolina law, the termination of a parent's parental rights in a juvenile involves the use of a two-stage process. N.C.G.S. §§ 7B-1109, -1110 (2019). "At the adjudicatory stage, the petitioner bears the burden of proving by 'clear, cogent, and convincing evidence' the existence of one or more grounds for termination under section 7B-1111(a) of the General Statutes." *In re*

*A.U.D.*, 373 N.C. 3, 5–6, 832 S.E.2d 698, 700 (2019) (quoting N.C.G.S. § 7B-1109(f) (2017)). "If [the trial court] determines that one or more grounds listed in [N.C.G.S. §] 7B-1111 are present, the court proceeds to the dispositional stage, at which the court must consider whether it is in the best interests of the juvenile[s] to terminate parental rights." *In re D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016).

"This Court reviews a trial court's adjudication decision pursuant to N.C.G.S. § 7B-1109 'in order to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law,' with the trial court's conclusions of law being subject to de novo review on appeal." *In re N.D.A.*, 373 N.C. 71, 74, 833 S.E.2d 768, 771 (2019) (citations omitted). "Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019). "Moreover, we review only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *Id.* at 407, 831 S.E.2d at 58–59 (citing *In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982)). In view of the fact that the existence of a single ground for termination suffices to support the termination of a parent's parental rights in a child, *see In re A.R.A.*, 373 N.C. 190, 194, 835 S.E.2d 417, 421 (2019), we will focus our attention upon the validity of respondent-mother's challenge to the lawfulness of the trial court's determination that respondent-mother's parental rights in the children were

subject to termination on the basis of dependency pursuant to N.C.G.S. § 7B-1111(a)(6).

According to N.C.G.S. § 7B-1111(a)(6), a trial court may terminate a parent's parental rights in a juvenile based upon a finding that

> the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of [N.C.]G.S. [§] 7B-101, and that there is a reasonable probability that the incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, intellectual disability, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.

N.C.G.S. § 7B-1111(a)(6). A dependent juvenile is one who is "in need of assistance or placement because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C.G.S. § 7B-101(9) (2019). "Thus, the trial court's findings regarding this ground 'must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements.'" *In re K.R.C.*, 374 N.C. 849, 859, 845 S.E.2d 56, 63 (2020) (quoting *In re L.R.S.*, 237 N.C. App. 16, 19, 764 S.E.2d 908, 910 (2014)).

In its termination orders, the trial court found that respondent-mother had been incarcerated during a "majority of this case" and remained imprisoned at the time of the termination hearing.[3] The trial court also found that respondent-mother had been arrested in October 2018 for "habitual felon, resisting public officer (3 counts), fictitious information to an officer, failure to he[e]d light or siren, hit/run fail to stop, flee/elude arrest (3 counts), and reckless driving." In addition, the trial court found that, on 31 January 2019, respondent-mother had been sentenced to a term of thirty-two to fifty-six months imprisonment and had a projected release date of 18 May 2022. The trial court further found that, since January 2019, respondent-mother had identified at least six individuals as potential placements for Allen and Maria and that all of "these individuals [had either failed to] complete[ ] the information packet or [had] declined to move forward with the [home study] process." Moreover, the trial court found that, even though several home study requests had been submitted relating to potential relative placements, all of them had been rejected "due to either criminal history or unsafe environment or a response was never received from the requested family member." For that reason, the trial court found that there was not a proper alternative care plan in place for the juveniles and that "no other options" for the juveniles aside from adoption were actually available.

---

[3] The adjudicatory findings of fact and conclusions of law contained in the separate orders terminating respondent-mother's parental rights in Allen and in Maria are substantially similar and will be considered as if they were identical in this opinion in the interests of brevity.

Based upon these findings of fact, the trial court concluded as a matter of law that respondent-mother was incapable of providing for the proper care and supervision of Allen and Maria so as to make them dependent juveniles as defined in N.C.G.S. § 7B-101(9), that there was a reasonable probability that respondent-mother's incapability would continue for the foreseeable future, and that respondent-mother lacked an appropriate alternative child care arrangement for the children.

Respondent-mother has not challenged the lawfulness of the trial court's determination that she lacked an appropriate alternative child care arrangement in her brief before this Court. Instead, respondent-mother argues that the trial court erred by determining that she was incapable of providing for the care and supervision of Allen and Maria and that this incapability would continue for the foreseeable future. We do not find respondent-mother's arguments to be persuasive.

As an initial matter, respondent-mother argues that the trial court erred by finding that her projected release date was 18 May 2022. According to respondent-mother, awarding credit for the time that she spent in pretrial confinement "results in a release date as early as 24 September 2021," so that, at the time of the termination hearing, respondent-mother had "as little as [twenty-two] months and [ten] days remaining on her sentence, with no other charges pending."

At the 14 November 2019 termination hearing, a social worker testified that respondent-mother's projected release date was May 2022. However, a copy of the criminal judgment that had been entered against respondent-mother was admitted

into evidence and shows that respondent-mother had been sentenced to a term of thirty-six to fifty-six months imprisonment and awarded credit against the service of her sentence for 129 days of pretrial confinement. As a result, as DHS now acknowledges, it appears that respondent-mother could possibly be released as early as September 2021, a date which is approximately twenty-two months after the date upon which the termination hearing was held. Even so, we conclude that any error that the trial court might have committed in determining respondent-mother's expected release date did not prejudice her chances for a more favorable outcome at the termination hearing. *See Starco, Inc. v. AMG Bonding and Ins. Servs., Inc.,* 124 N.C. App. 332, 335, 477 S.E.2d 211, 214 (1996) (stating that, "to obtain relief on appeal, an appellant must not only show error, but that appellant must also show that the error was material and prejudicial, amounting to denial of a substantial right that will likely affect the outcome of an action." (citation omitted)).

At the time of the termination hearing, respondent-mother was not scheduled to be released from imprisonment for at least twenty-two additional months and potentially faced up to forty-two additional months' imprisonment. The fact that respondent-mother faces an extended period of incarceration regardless of the exact date upon which she is scheduled to be released provides ample support for the trial court's determination that she was incapable of providing for the proper care and supervision of the children and that there was a reasonable probability that her incapability would continue for the foreseeable future. *See In re L.R.S.*, 237 N.C. App.

at 21, 764 S.E.2d at 911 (holding that, where the respondent-mother was not scheduled to be released from federal custody for at least an additional thirteen months at the time of the termination hearing and potentially faced another 30 months of imprisonment, her "extended incarceration [was] clearly sufficient to constitute a condition that rendered her unable or unavailable to parent [the juvenile]"); *see also In re N.T.U.*, 234 N.C. App. 722, 760 S.E.2d 49 (2014) (holding that, where the respondent-mother had been incarcerated since the juvenile had initially entered DSS custody, had been awaiting trial upon homicide and bank robbery charges for a period of two years, and did not have a scheduled trial date, the trial court did not err by determining that the respondent-mother was incapable of providing care for the juvenile and that there was a reasonable probability that her incapability to do so would continue for the foreseeable future). For that reason, any error that the trial court might have committed in determining the exact length of respondent-mother's period of incarceration constituted, at most, harmless error, with the trial court having sufficiently tied respondent-mother's incarceration to the relevant statutory standard in its findings.

In addition, respondent-mother argues that the trial court failed to explicitly identify a cause or condition that rendered her unable to provide care for the children as contemplated by N.C.G.S. § 7B-1111(a)(6), with this contention resting upon the decisions of the Court of Appeals in *In re Clark*, 151 N.C. App. 286, 565 S.E.2d 245 (2002), and *In re J.K.C.*, 218 N.C. App. 22, 721 S.E.2d 264 (2012). In *In re Clark*, the

Court of Appeals relied upon a prior version of N.C.G.S. § 7B-1111(a)(6), which provided that a parent's parental rights in a child were subject to termination in the event that the trial court found

> [t]hat the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of [N.C.]G.S. [§] 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other *similar* cause or condition.

*In re Clark*, 151 N.C. App. at 288, 565 S.E.2d at 247 (emphasis added) (quoting N.C.G.S. § 7B-1111(a)(6) (2001)). In light of the applicable statutory language, the Court of Appeals held that the trial court had erred by concluding that the respondent-father was incapable of providing for his daughter's care, despite his incarceration, given that "[t]here was no evidence at trial to suggest that respondent suffered from any physical or mental illness or disability that would prevent him from providing proper care and supervision for [his daughter], nor did the trial court make any findings of fact regarding such a condition," *id*. at 289, 565 S.E.2d at 247–48, and given the absence of "clear and convincing evidence to suggest that respondent was incapable of arranging for appropriate supervision for the child." *Id.* at 289, 565 S.E.2d at 248.

In *In re J.K.C.*, the Court of Appeals relied upon *In re Clark* in affirming the dismissal of a termination petition that rested upon allegations of neglect and

dependency. *In re J.K.C.*, 218 N.C. App. at 25, 721 S.E.2d at 266-77. In reaching this conclusion, the Court of Appeals held that, even though the trial court had found that the respondent-father was incarcerated and that no relative was able to provide appropriate care for his children, "the guardian ad litem here did not present any evidence that respondent's incapability of providing care and supervision was due to one of the specified conditions or any other *similar* cause or condition." *Id.* (emphasis added). As a result, in both *In re Clark* and *In re J.K.C.*, the Court of Appeals ruled in favor of the parent based upon the failure of the petitioner to present any evidence that the respondent lacked the ability to provide care for his children as a result of one of the causes or conditions delineated in N.C.G.S. § 7B-1111(a)(6).

The current version of N.C.G.S. § 7B-1111(a)(6) differs from that at issue in *In re Clark* and *In re J.K.C.* by permitting a finding of incapability based upon "substance abuse, intellectual disability, mental illness, organic brain syndrome, *or any other cause or condition* that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement." N.C.G.S. § 7B-1111(a)(6) (2019) (emphasis added). The current version of N.C.G.S. § 7B-1111(a)(6), unlike the version upon which the Court of Appeals relied in *In re Clark* and *In re J.K.C.*, does not use the word "similar" to describe the other causes or conditions that suffice to support a finding of incapability. In light of this alteration in the relevant statutory language, the trial court in this case was not required to

find that respondent-mother was incapable of providing for the children's care based upon of the statutorily enumerated conditions or any other *similar* cause or condition.

As the record reflects, DHS presented evidence tending to show that respondent-mother was incapable of providing for the care and supervision of Allen and Maria based upon a cause or condition encompassed within N.C.G.S. § 7B-1111(a)(6) — the fact that the sentence of imprisonment that had been imposed upon her would not expire until at least twenty-two additional months from the time of the termination hearing. *See In re L.R.S.*, 237 N.C. App. at 21, 764 S.E.2d at 911. Based upon this evidence, the trial court found as a fact that respondent-mother was incarcerated at the time of the termination hearing and would continue to be incarcerated for the duration of her sentence. The trial court's conclusion that respondent-mother was incapable of providing for the proper care and supervision of Allen and Maria for the foreseeable future flows logically from the findings of fact that detail the nature and extent of her continued incarceration. *See Coble v. Coble*, 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980) (stating that "[e]vidence must support findings; findings must support conclusions; conclusions must support the [order]" and that "[e]ach step of the progression must be taken by the trial judge, in logical sequence; each link in the chain of reasoning must appear in the order itself").

Thus, we hold the trial court did not err by determining that respondent-mother's parental rights in the children were subject to termination for dependency pursuant to N.C.G.S. § 7B-1111(a)(6). In addition, we note that respondent-mother

has not challenged the lawfulness of the trial court's conclusion that termination of her parental rights would be in Allen's and Maria's best interests. *See* N.C.G.S. § 7B-1110(a). As a result, for all of these reasons, we affirm the trial court's orders terminating respondent-mother's parental rights in Allen and Maria.

AFFIRMED.